**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JEFFREY P. SCHOVAN**

        **Plaintiff,**                    **CIVIL ACTION NO. 04-CV-74636-DT**

  **vs.**                                    **DISTRICT JUDGE PAUL D. BORMAN**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The decision of the Commissioner is supported by substantial evidence on the record.

**PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Jeffrey P. Schovan filed an application for Disability Insurance Benefits (DIB) on April 8, 2002, alleging a disability onset date of February 8, 2002. (Tr. 40). Defendant initially denied Plaintiff's application on June 25, 2002. (Tr. 29-32). Plaintiff received a hearing before ALJ Peter Americanos on May 20, 2004. (Tr. 162-193). The ALJ issued a written opinion denying Plaintiff's claims on July 29, 2004. (Tr. 12-18). The Appeals Council subsequently denied review, and the ALJ's second decision is now the final decision of the Commissioner. (Tr. 4-6); 20 C.F.R.

§ 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

## MEDICAL HISTORY

Plaintiff was born on March 14, 1973. (Tr. 40). Plaintiff apparently contracted ulcerative colitis while on active duty for the United States Marines in Somalia. (Tr. 184).

Plaintiff was diagnosed with Crohn's ileocolitis in February 2002. (Tr. 87). On August 1, 2000, Kavita Tumma, M.D. declared Plaintiff's Crohn's ileocolitis to be in clinical remission. (Tr. 87). Dr. Tumma treated Plaintiff for a flareup of Plaintiff's colitis on December 5, 2000. (Tr. 90). She noted that Plaintiff had been gradually improving with Prednisone. *Id.*

On March 14, 2001 Boaz I. Milner, M.D. examined Plaintiff and advised him to exercise aerobically at least five times a week and maintain a balanced high-protein diet. (Tr. 108). On May 3, 2001 Plaintiff reported drainage with occasional blood from a fistula, and occasional abdominal pain accompanied by diarrhea. (Tr. 106). Gastroscopy performed on May 3, 2001 showed a Barrett's esophagus, apthous ulcers in the duodenum and colon, and severe inflammation of the ileocecal valve. *Id.* On June 8, 2001 Plaintiff reported intermittent diarrhea up to five times a day, with occasional blood in his stool. (Tr. 104). Martin Tobi, M.D. concluded that Plaintiff's symptoms were compatible with Crohn's disease with possible gastro-esophagal reflux disease or low grade Crohn's pancreatitis. *Id.* An echogram of Plaintiff's abdomen taken on June 25, 2001 showed an edematous pancreas, suggesting possible pancreatitis. (Tr. 115). But a CT scan of Plaintiff's pancreas taken on July 18, 2001 showed no abnormality. (Tr. 114-115).

On October 16, 2001 Plaintiff reported to Kurtis Smith, M.D. that he had loose stools approximately five times a day, accompanied by heartburn and abdominal pain, but had no sour taste

in his mouth, no hemaemesis, hematochezia, melena, dysphagia, or odynophagia. (Tr. 103). On November 11, 2001 Plaintiff complained of chronic cramping epigastric cramping and dysphagia. (Tr. 102). Gastrointestinal endoscopies performed on Plaintiff on January 23, 2002 showed multiple ulcers in Plaintiff's colon and duodenum, along with a Barrett's esophagus. (Tr. 101). On April 1, 2002 Dr. Milner noted that Plaintiff had developed perirectal fistulas. (Tr. 98-99). On April 17, 2002 Plaintiff's reported that his colitis had improved with medication but that he continued to lose weight due to his poor appetite. (Tr. 96).

A state medical consultant performed a physical residual functional capacity evaluation of Plaintiff on June 17, 2002. (Tr. 118). The consultant concluded that Plaintiff was able to carry up to twenty five pounds frequently and up to fifty pounds on occasion, and that Plaintiff could only occasionally climb a ramp or stairs, and never limb ladders, ropes or scaffolds. (Tr. 118-125).

On October 14, 2002 Plaintiff had an episode of emesis accompanied by nausea. (Tr. 146). Plaintiff did not complain of loose stool or abdominal pain. *Id.* On November 7, 2002 Plaintiff reported that he had one well formed bowel movement a day, with occasional bright blood, and pain upon defecation. (Tr. 143). Plaintiff's physician regarded his colitis as "not well controlled." (Tr. 144).

On March 25, 2003 I.B. Milner, M.D. noted Plaintiff's complaints of persistent back pain and observed a ganglion cyst on Plaintiff's left wrist. (Tr. 142-143). He recommended that Plaintiff begin back-strengthening exercises and have an x-ray taken of his left wrist. *Id.* Dr. Milner examined Plaintiff again on August 25, 2003 and observed a visible rectal fistula. (Tr. 136-138). During that visit, Plaintiff complained of bloody stool with urgency to defecate and drainage from his fistula, but no incontinence. (Tr. 135). On March 23, 2004 Plaintiff complained that he had back

pain and six to seven unformed bowel movements a day, typically with dark blood in his stool. (Tr. 130). Dr. Tobi concluded that Plaintiff had had an exacerbation of Crohn's disease in the preceding six months, and opined that Plaitniff's severe back pain and arthralgia in that period were likely due to the disease. (Tr. 132).

On April 20, 2004 Plaintiff complained that he had 5-10 loose bowel movements a day along with bloody discharge from his fistula. (Tr. 128). Walter A. Salwen, M.D. ordered a fistulogram. (Tr. 130). Plaintiff consulted with Satish Maryala, M.D. and Dr. Tobi on August 21, 2004. (Tr. 126-27). Plaintiff reported that his back and epigastric pains were responsive to medication, and that his Crohn's symptoms had improved since he began taking steroids. *Id.* Drs. Maryala and Tobi noted that Plaintiff had not been taking the Immodium prescribed to control his diarrhea. *Id.* They advised Plaintiff to comply with his medication regime. *Id.*

## HEARING TESTIMONY

Plaintiff received a hearing before ALJ Peter Americanos on May 20, 2004. (Tr. 162-193). At that hearing, the ALJ took testimony from Plaintiff and a vocational expert. The vocational expert was instructed to testify about the availability of jobs for a hypothetical person of Plaintiff's age and educational level with some additional physical limitations. (Tr. 462). Specifically, the vocational expert was asked to testify concerning a hypothetical person who could perform light work but required two days off work each month, and one unscheduled five minute break in each workday in addition to normal scheduled breaks, an opportunity to change a protective undergarment at least once in every eight hour day, and easy access to a bathroom. (Tr. 187-189). The vocational expert testified that this hypothetical person would be unable to perform any of Plaintiff's past relevant

work, but would be able to work in a several thousand positions in the regional economy. (Tr. 188-189).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

> (1) he was not presently engaged in substantial gainful employment; and

>    (2)   he suffered from a severe impairment; and
>
>    (3)   the impairment met or was medically equal to a "listed impairment;" or
>
>    (4)   he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id*. (citations omitted).

In his October 26, 1999 opinion the ALJ determined that Plaintiff had the residual functional capacity for light work with an unscheduled five minute break in each workday (in addition to normal breaks), two days off of work each month, and an opportunity to change a protective undergarment at least once in an eight hour period. (Tr. 17). The ALJ relied on the testimony of the vocational expert to conclude that Plaintiff was unable to perform any of his past work but that he was not disabled because he remained able to perform a substantial number of jobs in the regional economy. *Id.*

Plaintiff argues that the ALJ's RFC finding failed to properly account for Plaintiff's need for breaks during the workday. During his testimony at the administrative hearing, Plaintiff claimed that he typically had ten bowel movements in a single day. However, when speaking with his doctors, Plaintiff frequently reported having four or five bowel movements a day. In addition, Plaintiff's medical records also show that he was not always compliant with portions of his medication regime designed to reduce the frequency of his bowel movements. (Tr. 126-27). The RFC determined by the ALJ would allow Plaintiff to go to the bathroom during two scheduled breaks, during one unscheduled break, and immediately before and after work. There is substantial evidence on the record to support the conclusion that Plaintiff does not need to go to the bathroom more often than is allowed by the ALJ's RFC.

Plaintiff also contends that the vocational expert's testimony was equivocal and therefore cannot constitute substantial evidence in support of the ALJ's decision. When asked to describe the work available for a person with Plaintiff's functional limits, except for the need to change his protective undergarment, and who also needed access to a bathroom, the vocational expert testified:

> The – taking the day off a month would not preclude the full-range of light work. The one unscheduled, five-minute break per day probably would be pretty much tolerated. The other part of that, access to a bathroom, I'm not sure I know how to answer it as there's [sic] obviously bathroom facilities in every workplace.

(Tr. 187). Standing alone, this testimony from the vocational expert might be regarded as equivocal. However, the vocational expert went on to identify several specific jobs and gave the approximate number each type of job available in the regional economy. (Tr. 188-189). This later testimony is an unequivocal evaluation of the availability of jobs for a person like Plaintiff, and is sufficient to support the ALJ's step five conclusion.

Plaintiff disputes the ALJ's finding that Plaintiff's condition improved between August 2002 and March 2004. In support, Plaintiff cites to a November 7, 2002 medical record noting that while Plaintiff was having only one well formed bowel movement per day, his Crohn's disease was not well controlled because he continued to have occasional fresh blood in his stool and some pain upon defecation. (Tr. 143-44). Contrary to Plaintiff's assertion, this record is evidence that Plaintiff's condition in November 2002, while severe, was better than it was in August 2002 or March 2004, when Plaintiff had many more bowel movements per day, typically with both fresh and old blood in his stool. The ALJ's conclusion that Plaintiff's Crohn's improved for some of the period between August 2002 and March 2004 is supported by substantial evidence on the record.

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective allegations of pain. Although Plaintiff testified at the administrative hearing, the ALJ concluded that Plaintiff's testimony was not fully credible. The ALJ reached his conclusion after noting the relatively broad scope of Plaintiff's daily activities, medical records suggesting that Plaintiff's pain was well controlled with medication, and the fact that Plaintiff's physicians repeatedly concluded that he could tolerate frequent vigorous exercise. Together, these portions of the record provide substantial evidence in support of the ALJ's conclusion that Plaintiff's pain was not as severe as he claimed at the administrative hearing. *See* 20 C.F.R. § 404.1529(c).

Finally, Plaintiff argues that the ALJ failed to properly incorporate side effects from Plaintiff's medications into Plaintiff's RFC. Specifically, Plaintiff testified that his pain medications made him tired and left him feeling as if he were in a haze. However, other evidence on the record suggests that Plaintiff's side effects are not severe. Plaintiff's alleged drowsiness and difficulty concentrating do not appear to have substantially affected his daily activities, and Plaintiff reports

being able to drive for more than an hour at a time without significant problems. Moreover, Plaintiff does not appear to have complained to his doctors about the side effects of pain medication, and Plaintiff's doctors do not appear to have observed any deficits in Plaintiff's ability to concentrate or remain alert. The conclusion of the ALJ that Plaintiff is not disabled is supported by substantial evidence on the record.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: 12/09/05                         s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE



### Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: 12/09/05                         s/ Lisa C. Bartlett
                                        Courtroom Deputy